# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RONNIE J. McCAMIS,

      Plaintiff,

v.                                 CASE NO:  8:16-CV-1130-T-30AEP

SERVIS ONE, INC., d/b/a BSI
FINANCIAL SERVICES, INCORPORATED,

      Defendant.

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (Dkt. 13) and Plaintiff's Response in Opposition (Dkt. 14).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part as explained below.

## BACKGROUND

This class action relates to Defendant's alleged practice of attempting to collect a discharged debt directly from a debtor after Defendant was informed that the debt was discharged in bankruptcy.  Specifically, Plaintiff Ronnie J. McCamis alleges that in February 2015, he filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, in Case No. 8:15-bk-01271-CPM (Bankr. M.D. Fla.).  Plaintiff listed in his bankruptcy petition a mortgage on real property, provided notice in his bankruptcy case that he intended to surrender the property, and vacated the property.

Plaintiff received a discharge in bankruptcy that extinguished his personal liability on the mortgage debt in May 2015.

Defendant Servis One, Inc. d/b/a BSI Financial Services, Inc. ("BSI") began servicing the mortgage after it was discharged. Plaintiff was represented by counsel in the bankruptcy case and was also represented by the law firm of Centrone & Shrader, P.A. with respect to BSI's continued collection efforts post-bankruptcy. Plaintiff notified BSI of his bankruptcy discharge and representation by counsel.

Plaintiff alleges that despite BSI's actual knowledge that Plaintiff was represented by counsel and that his personal liability on the mortgage debt had been discharged in bankruptcy, BSI continued to contact Plaintiff directly in an attempt to collect the mortgage debt from him. On October 20, 2015, BSI sent Plaintiff a "Mortgage Statement" asserting an "Amount Due" of $80,568.39, and stating that amount had a "Payment Due Date" of "11/01/15." The Mortgage Statement included a payment coupon stating an amount due and payment date, with payment instructions. BSI sent additional Mortgage Statements on November 19, 2015, December 19, 2015, and January 19, 2016, that provided different amounts due and payment due dates, but were otherwise substantially similar.[1]

BSI also sent Plaintiff correspondence.[2] This included a letter notifying Plaintiff that BSI would be servicing the loan and stating that "your total unpaid principal balance is

---

[1] The mortgage statements are attached to Plaintiff's complaint at Exhibit A.

[2] The correspondence is attached to Plaintiff's complaint at Exhibit B.

$117,422.86" and "[t]he total debt inclusive of all past due interest and fees, if any is $165,363.95," a letter providing "options" regarding the loan such as loan modification and a repayment plan, and two letters regarding hazard insurance on the property.

Based on this conduct, Plaintiff asserts, on behalf of himself and the class, the following claims: (1) violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and (3) relief under 11 U.S.C. § 105(a) for BSI's violation of the discharge injunction.

BSI now moves to dismiss the complaint for lack of standing and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. BSI also argues that the Court does not have jurisdiction to award any relief to Plaintiff related to BSI's alleged violation of the discharge injunction.

## DISCUSSION

### I.     Standing

BSI's first argument is that Plaintiff lacks Article III standing because he does not plead an injury in fact. The Court disagrees. To establish standing a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiff alleges a concrete and particularized injury in fact: Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be

free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt. As the Eleventh Circuit recently recognized in *Church v. Accretive Health, Inc.*, --- F. App'x. ---, 2016 WL 3611543 (11th Cir. July 6, 2016), violation of statutory rights is not a "hypothetical or uncertain" injury, but "one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." 2016 WL 3611543, at \*3. Accordingly, the Court concludes that Plaintiff has standing.

## II.    Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations." *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### B.    Attempt to Collect under the FCCPA and the FDCPA

The crux of BSI's motion is that Plaintiff's FCCPA and FDCPA claims fail as a matter of law because the mortgage statements and other correspondence BSI sent directly to Plaintiff were not "debt collection."[3]   There is not "a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012).   However, the Eleventh Circuit applies the least sophisticated debtor standard in determining whether a communication was an attempt to collect a debt. *See id.*   The Eleventh Circuit has also noted that "courts should look to the language of the letters in question, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered...." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x. 551, 553 (11th Cir. 2015).   In addition, "[a] demand for payment need not be express." *Id.*   An "implicit demand for payment [may exist] where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting debt." *Id.*

The Court concludes that the mortgage statements attached to the complaint constitute an attempt to collect a debt.   Each statement (1) lists an "Amount Due" and payment due date, (2) includes a payment coupon with payment instructions, and (3) includes a "Delinquency Notice."   Although the mortgage statements contain a disclaimer in fine print

---

[3]   The Court may consider the mortgage statements and other correspondence at the motion to dismiss stage because Plaintiff attached them to his complaint and they are clearly central to his claims.

on the first page explaining that the statement is informational if the consumer is in bankruptcy or has received a bankruptcy discharge, "such a disclaimer is insufficient to shield [BSI] as a matter of law from liability at this stage of the litigation." *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, No. 8:15-CV-2380-T-33TGW, 2016 WL 409633, at *6 (M.D. Fla. Feb. 3, 2016) (quoting *Lapointe v. Bank of America, N.A.*, No. 8:15-CV-1402-T-26EAJ, 2015 WL 10097518 (M.D. Fla. Aug. 26, 2015)).  In *LaPointe*, the court noted:

> The Court also agrees that Defendant's disclaimers do not insulate it from liability for its collection attempts on a discharged debt, especially when coupled with requests for payment or statements of a past due amount.  Many of the disclaimers on which Defendant relies are in tiny inconspicuous print.  Several letters were accompanied by payment coupons with payment amounts, due dates, and payment instructions.

*Id.* at *2 (citations omitted).  Accordingly, the motion to dismiss is denied with respect to the four mortgage statements attached to the complaint.

The Court also concludes that BSI's additional correspondence constitutes debt collection, *except* for the two letters related to hazard insurance.  Specifically, viewing the language of the October 16, 2015 service transfer notice and October 20, 2015 single point of contact letter from the perspective of the least sophisticated consumer, the correspondence could be viewed as pressuring Plaintiff to make payments on the mortgage debt for which his personal liability had already been discharged.  For example, the service transfer notice states that Plaintiff's "total unpaid principal balance is $117,422.86 and Escrow balance $0.00" is due and that the "total debt inclusive of all past due interest and fees, if any, is $165,363.95."  The service transfer notice states on the second page that it "is an attempt to collect a debt."

Similarly, the single point of contact letter discusses "options available to [Plaintiff] regarding [his] mortgage loan" and appoints a single point of contact assigned to Plaintiff's loan to "assist" Plaintiff with managing the loan.  The letter also discusses "Loan Modification," a "Repayment Plan," and "Deed in Lieu of Foreclosure or Short Sale."  At this stage, these letters could be interpreted as containing an implicit demand for payment. *See Roth v. Nationstar Mortgage, LLC*, No. 2:15-CV-783-FTM-29MRM, 2016 WL 3570991, at *4 (M.D. Fla. July 1, 2016).  Accordingly, the motion to dismiss is denied with respect to the October 16, 2015 service transfer notice and October 20, 2015 single point of contact letter.

Finally, the Court concludes that the November 4, 2015, and November 23, 2015 notices regarding hazard insurance are not debt collection.  From the perspective of the least sophisticated debtor, these letters simply inform Plaintiff that if Plaintiff does not provide proof of insurance, BSI may have to purchase hazard insurance itself.  They do not reference Plaintiff's mortgage loan debt or make any demand for payments.  There is also no implicit demand for payment.  Accordingly, the motion to dismiss is granted with respect to these two notices.[4]

---

[4] Plaintiff argues that these letters should not have been sent to him in the first place because the debt had been discharged in bankruptcy; this argument places the cart before the horse—the Court has to decide the threshold issue of whether the letters were sent in connection with collecting a debt before it reaches the issue of whether they were sent for an improper purpose.  Having answered the threshold question in the negative, the Court need not discuss whether BSI should have sent them to Plaintiff in the first place.

**C.      Whether BSI's Letters Were Harassing**

In Counts I and II, Plaintiff alleges, in relevant part, that BSI's communications violated 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7) because they were harassing.  BSI argues that "neither the volume of communications nor their subject matter supports a harassment claim under either statute."  The court in *Valle v. National Recovery Agency*, No. 8:10-CV-2775-T-23MAP, 2012 WL 1831156, at *1 (M.D. Fla. May 18, 2012), listed the following factors to consider when determining whether debt collection communications constitute harassment:

> (1) the volume and frequency of attempts to contact the debtor, (2) the volume and frequency of contacts with the debtor, (3) the duration of the debt collector's attempted communication and collection, (4) the debt collector's use of abusive language, (5) the medium of the debt collector's communication, (6) the debtor's disputing the debt or the amount due, (7) the debtor's demanding a cessation of the communication, (8) the debt collector's leaving a message, (9) the debt collector's calling at an unreasonable hour, (10) the debt collector's calling the debtor at work, (11) the debt collector's threatening the debtor, (12) the debt collector's lying to the debtor, (13) the debt collector's impersonating an attorney or a public official, (14) the debt collector's contacting a friend, co-worker, employee, employer, or family member, and (15) the debt collector's simulating or threatening legal process.

Upon consideration of these factors, the Court concludes that the eight letters BSI sent to Plaintiff over the course of four months do not constitute harassment as a matter of law. The communications were in writing, one of the least intrusive means of communicating, Plaintiff does not allege that he demanded cessation of the communications, and the letters did not threaten Plaintiff, use abusive language, or contact Plaintiff's friends, co-workers, employers, or family members.  Simply put, the letters could not reasonably be expected to

harass Plaintiff. Accordingly, the motion to dismiss is granted with respect to Plaintiff's claims under 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7).

### D.     Illegitimate Debt

Plaintiff alleges that BSI violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and Fla. Stat. § 559.72(9) because BSI attempted to enforce an illegitimate debt, or legal right that it knew did not exist in light of the bankruptcy discharge. BSI argues that these claims fail as a matter of law because (1) Plaintiff's mortgage loan was still a valid, enforceable debt and (2) Plaintiff remained the titleholder to the property until the foreclosure proceedings were concluded. BSI's arguments have been rejected by numerous courts. *See Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("When a debtor's debts are discharged in bankruptcy, efforts to collect them are unlawful."); *Edie v. Colltech, Inc.*, 987 F. Supp. 2d 951, 962-63 (D. Minn. 2013) ("Sending a collection letter indicating that a certain debt is due and payable when the debt has actually been discharged in bankruptcy constitutes a false representation about the legal status of the debt . . ."); *see also Roth*, 2016 WL 3570991, at *5 (discussing that, although the bankruptcy discharge order does not extinguish the debt itself, "there is some authority for the proposition that" the debt, as against the debtor personally, is no longer legitimate). Accordingly, the motion to dismiss is denied with respect to Plaintiff's claims under 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and Fla. Stat. § 559.72(9).

**III.     The Court's Jurisdiction over Plaintiff's Discharge Injunction Violation Claim**

BSI argues that Count III improperly seeks relief under 11 U.S.C. § 105(a) for BSI's alleged violation of Plaintiff's discharge injunction because Plaintiff must seek this relief in the bankruptcy court.  Although the Eleventh Circuit has not directly addressed this issue, the Court finds the court's reasoning in *Leahy-Fernandez*, 2016 WL 409633, at *8, persuasive and concludes that Plaintiff must institute contempt proceedings in the bankruptcy court.  Specifically, in *Leahy-Fernandez*, the court stated the following with respect to this issue:

> The Eleventh Circuit has not addressed whether a debtor who received a discharge in bankruptcy may seek redress for alleged violations of a discharge injunction through Section 105 in an independent action filed in district court. Furthermore, there is conflict among the Circuits that have addressed the issue. The weight of authority, however, holds that a debtor may not seek to remedy an alleged violation of a discharge injunction through Section 105 outside the context of a contempt proceeding in bankruptcy.  *In re Joubert*, 411 F.3d 452, 455-57 (3d Cir. 2005) (agreeing that Section 105 does not authorize private causes of action to remedy bankruptcy discharge violations); *Walls*, 276 F.3d at 506 (stating, "violations of [§ 524] may not independently be remedied through § 105 absent contempt proceeding in the bankruptcy court"); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916 (7th Cir. 2001) (noting in dicta that debtor could move to hold creditor in contempt of discharge order); *Pertuso*, 233 F.3d at 423 n. 1 (rejecting argument that Section 105(a) may be asserted outside of contempt proceeding in bankruptcy court).
>
> In contrast, only one Circuit has allowed a debtor to seek redress under Section 105 for alleged violations of a discharge injunction.  *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 446 (1st Cir. 2000).  Upon review of the authorities, the Court holds that a debtor who has received a discharge in bankruptcy may not seek redress for a putative violation of a discharge injunction through an independent action rather than instituting contempt proceedings in the bankruptcy court. "It is settled that 'the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order,' and this 'power to sanction contempt is jurisdictional.'"  *In re McLean*, 794 F.3d 1313, 1318-19 (11th Cir. 2015).

*Id.*; *see also Cohen v. HSBC Mortgage Servs., Inc.*, No. 8:15-CV-01922-T27EAJ, 2016 WL 3748659, at *2 (M.D. Fla. Mar. 24, 2016) ("Because the use of the contempt power must be in furtherance of the bankruptcy code, § 105(a) only applies within the context of bankruptcy proceedings.") (internal quotations and citations omitted).  Accordingly, the motion to dismiss is granted with respect to Count III of the complaint.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss (Dkt. #13) is granted in part and denied in part as explained herein.

2. Count III is dismissed without prejudice to Plaintiff to pursue this remedy directly in the bankruptcy court.

3. Defendant shall file its answer to the complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on July 29, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

*S:\Even\2016\16-cv-1130 mtd 13.wpd*