UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONNIE J. MCCAMIS,

       Plaintiff,

v.

                            CASE NO. 8:16-cv-01130-JSM-AEP

SERVIS ONE, INC., d/b/a BSI FINANCIAL
SERVICES, INC.,

       Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO
MOTION FOR CLASS CERTIFICATION**

       Defendant, Servis One, Inc., d/b/a BSI Financial Services, Inc. ("BSI") responds in opposition to Plaintiff's Motion for Class Certification (the "Class Certification Motion") and says:

**I.**      **INTRODUCTION**

       Plaintiff's claims arise out of an atypical set of mistakes that resulted in Plaintiff receiving mortgage communications after he surrendered his property and received a bankruptcy discharge. In response to what Plaintiff mistakenly perceives as BSI's "practice of sending collections communications" to borrowers who received a bankruptcy discharge, Plaintiff requests that the Court certify the following class:

> All individuals who: (1) filed a Chapter 7 or Chapter 13 bankruptcy in the Middle District of Florida, (2) surrendered their home in the bankruptcy proceedings, (3) obtained a discharge, and (4) after they received the discharge, received communications related to the discharged mortgage from or on behalf of Servis One, Inc., d/b/a BSI Financial Services, Inc., on or after May 6, 2014.

(Dkt. 34, 1).

The Class Certification Motion should be denied for several reasons. First, the proposed class is not ascertainable. To even identify potential class members, the Court would need to conduct burdensome and time consuming mini-trials. Second, Plaintiff fails to identify any common issues of law or fact. Last, even if Plaintiff could identify any common issues, individual issues of fact and law would completely overwhelm any questions common to the class. As such, the class does not satisfy the Rule 23(b)(3) predominance standard. Therefore, the Court should deny the Class Certification Motion.

## II.    FACTUAL BACKGROUND

### A.    BSI's Policies.

Contrary to Plaintiff's unsupported assertions, BSI does not engage in a "practice of sending collections communications regarding mortgage debts that were discharged in bankruptcy." (Dkt. 34, at 1.) Instead, BSI maintains extensive policies and procedures designed to prevent communications with borrowers who filed bankruptcy or received a bankruptcy discharge.

When a BSI employee receives notice of a borrower's bankruptcy, BSI's policies require the employee to verify the bankruptcy through PACER.[1] Once verified, the employee must update the borrower's account with the bankruptcy information and place a bankruptcy hold on the account.[2] While the hold is active, BSI ceases all mortgage-related communications to the borrower and directs all communications to borrower's counsel, unless the borrower's counsel gives BSI written authorization to communicate with the borrower directly.[3] If a borrower receives

---

[1] Declaration of Karin Murphy attached as Exhibit 1 (hereafter "Decl."), Ex. A, pg. 3–4.
[2] Decl., Ex. A, pg. 3–4.
[3] Decl., Ex. A, pg. 21–22.

a discharge, BSI flags the account and sends no additional mortgage-related communications to the borrower unless otherwise requested by the borrower or the borrower's attorney.[4]

BSI also has maintains policies and procedures designed to ensure loans are properly flagged for bankruptcy when transferred to BSI. Its policies dictate that all prior servicers must indicate whether the borrower is in an active bankruptcy or has received a bankruptcy discharge when transferring a loan to BSI.[5] Additionally, BSI scrubs the service transferred loans for bankruptcy filings upon receipt in an attempt to flag loans not properly identified by prior servicers.[6]

### B. Plaintiff's Bankruptcy and Mortgage.

In February 2015, Plaintiff filed for bankruptcy. (Dkt. 1, ¶ 1.) At the time of filing, Plaintiff had a mortgage on his home. (Dkt. 1, ¶ 1.) Plaintiff's mortgage was serviced by Rushmore Loan Management Services LLC ("Rushmore"), not BSI. (Dkt. 34-2, at 11.) BSI was not listed as a creditor in Plaintiff's bankruptcy schedules and did not receive notice of Plaintiff's petition. (Dkt. 34-2, at 11.)[7]  In May 2015, Plaintiff received a discharge of his personal liability for the mortgage debt. BSI did not receive notice of the discharge.[8]

In October 2015, Rushmore transferred Plaintiff's loan to BSI for servicing.[9] Rushmore did not indicate that Plaintiff had filed bankruptcy or received a discharge.[10] Consequently, BSI

---

[4] Decl., Ex. A, pg. 15–16, 22–25
[5] Decl., Ex. A, pg. 6; Decl., Ex. B, pg. 32–35.
[6] Decl., Ex. A, pg. 6.
[7] Decl., ¶ 7.
[8] Decl., ¶ 8.
[9] Decl., ¶ 6.
[10] Decl., ¶ 7.

began servicing Plaintiff's loan as if Plaintiff was personally liable for the debt, sending a variety of mortgage-related communications directly to Plaintiff.[11]

On December 16, 2015, Plaintiff called BSI and told BSI that he had previously filed bankruptcy. (Dkt. 34-8, at 11.) On February 4, 2016, Plaintiff again spoke with BSI and provided BSI with his bankruptcy case number. (Dkt. 34-8, at 14.) The BSI representative then sent an internal message, noting that Plaintiff had claimed to have filed bankruptcy and requesting that Plaintiff's file be update accordingly. (Dkt. 34-8, 14.) Despite Plaintiff's communications with BSI, Plaintiff's file was not updated to reflect his bankruptcy discharge.

### C.    Plaintiff's Claims.

Plaintiff contends that BSI violated two provisions of the Florida Consumer Collection Practices Act, Fla. Stat. 559.55 *et seq.* ("FCCPA"), Sections 559.72(9) and (18), and three provisions of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"), 15 U.S.C §§ 1692c(a)(2), 1692e, and 1692f.[12]

Section 559.72(9) prohibits a person from attempting "to enforce a debt when such person **knows** that the debt is not legitimate, or assert the existence of some other legal right when such person **knows** that the right does not exist." (emphasis added). Section 559.72(18) prohibits a person from communicating

> with a debtor if the person **knows** that the debtor is represented by an attorney with respect to such debt and **has knowledge** of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct

---

[11] Decl., ¶ 9.

[12] Throughout the Class Certification Motion, Plaintiff mistakenly contends that 15 U.S.C. § 1692d and Fla. Stat. 559.72(7) are at issue in this case. (Dkt. 34, 3–4, 7, 11.) However, the Court dismissed both counts, finding that the letters attached to the Complaint "could not be reasonably expected to harass Plaintiff." (Dkt. 19, 8–9.)

> communication with the debtor, or unless the debtor initiates the
> communication.

(emphasis added).

15 U.S.C § 1692c(a)(2) prohibits a debt collector from communicating with a debtor if

> the debt collector **knows** the consumer is represented by an attorney
> with respect to such debt and **has knowledge** of, or can readily
> ascertain, such attorney's name and address, unless the attorney fails
> to respond within a reasonable period of time to a communication
> from the debt collector or unless the attorney consents to direct
> communication with the consumer

(emphasis added). 15 U.S.C. § 1692e prohibits the use of "any false, deceptive, or misleading

representation or means in connection with the collection of any debt." 15 U.S.C. § 1692f profits

from using "unfair or unconscionable means to collect or attempt to collect any debt."

Both the FCCPA and FDCPA apply only to attempts to collect consumer debts. *McCaskill*

*v. Navient Sols., Inc.*, 178 F. Supp. 3d 1281, 1295 (M.D. Fla. 2016). The FDCPA is narrower in

scope because it applies only to debt collection attempts by "debt collectors." *Arencibia v.*

*Mortgage Guar. Ins. Corp.*, 659 Fed. Appx. 564, 565 (11th Cir. 2016).

## III.   CLASS CERTIFICATION STANDARD

"The initial burden of proof to establish the propriety of class certification rests with the

advocate of the class." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir.

2000). Rule 23 is more than a "mere pleading standard." *Comcast Corp. v. Behrend*, 133 S. Ct.

1426, 1432 (2013). "Rather, a party must not only 'be prepared to prove that there are *in fact*

sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses,

and adequacy of representation, as required by Rule 23(a)." *Id.* (quoting *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011)). "The party must also satisfy through evidentiary proof at least

one of the provisions of Rule 23(b)." *Id.*

"A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 739 (5th Cir. 1996)). "[T]he fight over class certification is often the whole ball game." *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1294 (11th Cir. 2006). "Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978).

## IV.   ARGUMENT

Plaintiff's putative class cannot be certified for three reasons. First, the class is not readily ascertainable. Second, the class does not contain common issues of fact or law. Third, individual issues affecting individual class members predominate over any common issues affecting the class as a whole.

### A.    Plaintiff Abandoned the Attorney Subclass.

As a preliminary matter, Plaintiff abandoned his request for an attorney subclass. The Complaint alleges an "Attorney Subclass," which consists of "all individuals in the Middle District of Florida who are in the Class outlined above, who also received any communication from Defendant when Defendant knew that the individual was represented by an attorney and had knowledge of, or could readily ascertain, such attorney's name and address." (Dkt. 1, ¶ 14.) The Class Certification Motion makes no mention of the Attorney Subclass. Therefore, the Attorney Subclass is not before the Court and should treated as abandoned.

### B.    The Class is Not Ascertainable.

"In seeking class certification, Plaintiff must first establish one 'threshold requirement not mentioned, but implicit in the Rule 23 analysis: that is, [ ] Plaintiff must demonstrate that the

proposed class is adequately defined and clearly ascertainable.'" *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 680 (M.D. Fla. 2015) (quoting *Varnes v. Home Depot USA*, 2015 WL 5190648, at *2 (M.D. Fla. Sept. 4, 2015)). Ascertainability means that the class can be identified by reference to objective criteria and the analysis of the objective criteria be administratively feasible. *Christie v. Bank of Am., N.A.*, at *4 (M.D. Fla. Jan. 7, 2016), *report and recommendation adopted,* 2016 WL 633796 (M.D. Fla. Feb. 17, 2016); *see also Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015) ("[T]he plaintiff must propose an administratively feasible method by which class members can be identified.") (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)); *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014) ("'Administrative feasibility' means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'"). "Ascertainability . . . addresses whether class members can be identified at all, at least in any administratively feasible (or manageable) way." *Karhu*, 621 Fed. at 950.

Plaintiff has the burden of proposing an administratively feasible method for identifying class members. *Id.* at 947. "A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948. "Similarly, a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic." *Id.*

Although Plaintiff largely ignores the ascertainability requirement, his proposed methodology appears to be as follows: (1) first, BSI provides Plaintiff with a list of all customers

it has ever serviced with loans related to properties within the Middle District of Florida; (2) then, using the list, Plaintiff searches public records to identify those customers that filed bankruptcy, surrendered their home in the bankruptcy case, and received a bankruptcy discharge of their mortgage debt; (3) Plaintiff provides BSI the borrowers it identified; and (4) BSI then conducts a loan-by-loan review to determine if BSI sent the customer any communications related to the discharged mortgage. (Dkt. 34, 21–23.)

Plaintiff's proposed methodology is unmanageable because it requires protracted individual inquiries. For each bankruptcy, the parties and the Court would need to examine the entire underlying substance of each bankruptcy to determine whether the loan serviced by BSI was an asset of the estate, the final disposition of the home, and whether the class member received a discharge of the debt. In many instances, debtors' stated intention with respect to a home frequently change throughout the course of a bankruptcy case. There is no way to actually verify that a debtor actually "surrendered" his or her home without a complete review.

Further, Plaintiff's class definition includes only those customers that actually "***received*** communications related to the discharged mortgage" from BSI after discharge. (Dkt. 34, at 1.) Plaintiff's methodology only requires BSI to identify those customers with whom it attempted to communicate. Plaintiff offers no solution for determining which borrowers actually received BSI's communications. Customers that did not actually receive BSI's correspondence would not have standing to bring the alleged claims. Plaintiff's methodology assumes that each borrower received every attempted correspondence by BSI post-discharge, even where BSI mailed the correspondence to a property presumably surrendered and vacated by the customer. This assumption is unfounded.

Last, if the Court does not considered the Attorney Subclass to have been waived, then the subclass presents even greater ascertainability challenges. The subclass consists of class members who received post-discharge communications from BSI when BSI "knew that the individual was represented by an attorney and had knowledge of, or could readily ascertain, such attorney's name and address." Whether BSI had actual knowledge of attorney representation is an extremely fact-dependent issue that requires individual inquiry for each subclass member. Servicers learn of attorney representation in a number of ways, including written or oral notice from the borrower's attorney, from the borrower; from a prior servicer, or from their agents or vendors. To determine whether BSI had knowledge of attorney representation, the parties would need to conduct a loan-by-loan review of all servicing notes, call recordings, and imaged correspondences to see if BSI received potential notice. Then, the Court would be forced to analyze the nature and substance of each notice to determine whether the communications were sufficient to give BSI actual knowledge of attorney representation. There is simply no uniform, objective, or efficient method to identify BSI's actual knowledge with respect to each individual borrower. Therefore, the Attorney Subclass should not be certified.[13]

---

[13] *See Spinelli v. Capital One Bank*, 2009 WL 700705, at *5 (M.D. Fla. Mar. 14, 2009) ("Defendants' argument is flawed in that it seeks a class definition that would require the court to inquire into the state of mind of each unnamed class member in order to determine whether they properly belong within the class."); *Grillasca v. Hess Corp.*, 2007 WL 2121726, at *3 (M.D. Fla. July 24, 2007), *on reconsideration in part sub nom. Grillasca v. Amerada Hess Corp.*, 2007 WL 2702334 (M.D. Fla. Sept. 14, 2007) ("However, referencing strictly to the state of mind of a potential member would be too subjective and tenuous to be a proper criterion. As the court seeks for an objective and tangible criterion for proper inclusion at the certification stage, courts must be careful not to decide the underlying merits of the claims."); *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 677 (S.D. Fla. 2009) (refusing to certify a class of plaintiff's that were "unaware" that produce posed a threat because "individual inquiry would have to be made as to each boat owner's knowledge prior to using E10"); *Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 A.M.C. 2934 (S.D. Fla. 2006) (noting that courts decline to certify classes on the basis of ascertainability "when membership in the class is made contingent on the state of mind of putative class

### C.   Plaintiff Does Not Identify Any Common Issues of Fact or Law.

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The common question must be one that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Commonality "is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.''" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97 (2009)). Commonality requires that the class's claims depend on a common contention and that the common contention "must be of such a nature that it is capable of classwide resolution." *Id.* at 350.

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* at 350 (emphasis in original) (quoting Nagareda, at 132.).

Perhaps banking on the relatively "low hurdle" posed by commonality, Plaintiff brushes over prong and does not clearly identify a central, common issues of law or fact susceptible to class-wide resolution. Plaintiff instead alludes to two purportedly common issues: (1) the case

---

members."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1161 (2016) ("[C]lasses that are defined by subjective criteria, such as by a person's state of mind, fail the objectivity requirement."); *Gardner v. Equifax Info. Services, LLC*, 2007 WL 2261688, at *8 (D. Minn. Aug. 6, 2007) (To define the classes, "an in-depth inquiry into the dispute letters and what they communicated, in addition to Equifax's response, would have to be undertaken. Such an in-depth inquiry to properly develop subclasses removes one of the benefits of the class action mechanism in the first place, which is the avoidance of individual inquiry.")

involve form communications; and (2) BSI's liability will depend on whether sending post-discharge communications violated the FCCPA and FDCPA. Neither assertion is correct.

Plaintiff's class claims do not arise out of single form communication. Rather, Plaintiff's class definition includes customers who received ***any*** communications related to their discharged mortgage. As shown by communications attached to the Motion for Class Certification, this class encompasses a wide range of very different latters. Consequently, whether the communications violated the FCCPA and FDCPA is also not a common question because, as this Court previously noted, not every communication from BSI constitutes debt collection (Dkt. 19, 5–7.)[14] Therefore, whether each communication is actionable depends on, among many other individual factors, the actual contents of the communications. Because the class will involve countless disparate letters from BSI, the Court cannot reach common answers regarding liability.

Plaintiff cites a number of cases[15] for the proposition that "[t]he use of form communications is a hallmark of commonality" and that "numerous case federal courts have recognized the appropriateness of certifying class actions involving, as this case does, claims of a common course of conduct involving collection efforts alleged to violate a consumer protection statute." (Dkt. 34, at 8.) However, a cursory review of each case's underlying facts demonstrates why they are inapposite and highlights why Plaintiff's class claims cannot be resolved on an aggregate basis.

---

[14] Likewise, many of communications to the purported putative class members on which Plaintiff relies on in support of class certification are similar, are non-debt collection communications. *See*, (Dkt. 34-15, at 5–8; Dkt. 34-18, at 14–15; Dkt. 34-19, at 18–19, 20–21; Dkt. 34-20, att 11–12, 15–16.)

[15] *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998); *Kalkstein v. Collectco, Inc.*, 304 F.R.D. 114 (E.D. N.Y. 2015), *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014), *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004), *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007), and *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700-01 (M.D. Fla. 2000).

Each case concerned a common course of conduct, in which the defendants each sent the class members correspondences that allegedly violated the FDCPA or FCCPA because of specific, uniform language apparent on the face of the communications. The classes presented sufficient common questions because the defendant's liability to the entire class turned on the legality of the uniform language sent to every class member. The same is not true here. First, Plaintiff's class claims do not arise from a common set of communications because the class encompasses all post-discharge communications, regardless of content. Plaintiff does not contend that the content of the letters violated the FCCPA and FDCPA. Further, the unchallenged evidence before the Court shows that BSI does not have a policy of communicating with borrowers post-discharge. Consequently, the class claims do not address a "common course of conduct" by BSI. Thus, BSI's liability turns on a host of individual issues of fact and law and that do not lend themselves to aggregate resolution.

**D.      The Putative Class Does Not Satisfy the Predominance Requirement.**

Once a plaintiff demonstrates that a putative class satisfies the Rule 23(a) requirements, it must then prove that the class can be maintained under one of the three categories of classes set forth in Rule 23(b). Plaintiff contends that the class satisfies Rule 23(b)(3). (Dkt. 34, at 15–16.) To maintain a class under Rule 23(b)(3), Plaintiff must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common,

aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50, pp. 196–197 (5th ed. 2012)).

Individual issues of law and fact abound with each of Plaintiff's proposed classes and supersede any potential common questions of law or fact. Therefore, Plaintiff's classes do not satisfy predominance.

### 1. The Court must make individual inquiries into the nature of each class member's debt to determine if it is a consumer debt.

A prerequisite for liability under both the FDCPA and FCCPA is that the underlying debt is a "consumer debt," meaning an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." § 559.55(6), Fla. Sta; 15 U.S.C. § 1692a (same definition). Even though the loans at issue are presumably related to residential mortgages, such debts are not *per se* consumer debts. Loans for residential properties used as rental, investment, or business properties or loans secured by a borrower's home where the loan proceeds are used for commercial purposes are not consumer debts. *Drew v. Ocwen Loan Servicing, LLC*, 2015 WL 5637569, at *3 (M.D. Fla. Sept. 17, 2015); *Acciard v. Whitney*, 2008 WL 5120898, at *9 (M.D. Fla. Dec. 4, 2008). Thus, the Court would be need to make individual inquiries into each class member's use of the property and the loan proceeds to determine if the borrower's debt was a consumer debt. BSI's records do not track whether customers use their properties for investment purposes,[16] and Plaintiff offers no methodology to resolve this issue on a class-wide basis.

---

[16] Decl., ¶ 10.

> **2.     The Court must examine the content of each communication sent to each class member to determine if the communications are debt collection efforts.**

Another prerequisite for liability under both the FCCPA and FDCPA is that the defendant be attempting to collect a debt. *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280 (M.D. Fla. 2015) (actionable communications "must have been made 'in connection with the collection of any debt'"). There is no bright-line rule for determining whether a communication constitutes debt collection. *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280 (M.D. Fla. 2015). Rather, a court must undertake a fact-intensive investigation, examining the language of the correspondence to determine whether the "least sophisticated debtor" would consider the communication to be made in connection with the collection of a debt. (Dkt. 19, at 5).

The putative class includes all borrowers who received *any* post-discharge communications from BSI, regardless of content or form. Thus, the Court will be need to parse though each communication to each class member to determine if each it qualifies as debt collection. The wide array of correspondences attached to the Class Certification Motion -- many of which are wholly unrelated to debt collection[17] -- demonstrates why this is impossible on a class basis. The putative class simply did not receive uniform communications and cannot receive a uniform determination of liability.

> **3.     The Court must make individual findings regarding BSI's actual knowledge with respect to each class member.**

The majority of Plaintiff's FCCPA and FDCPA claims involve a showing that BSI had actual knowledge of certain facts at the time of its communications.

---

[17] *See, e.g.,* (Dkt. 34-15, at 5–8, 16–23; 34-16, at 5–8;  34-18, at 12–15, 18–24; 34-19, at 3–4, 10–16, 18–21; 34-20, at 15–16.)

Section 559.72(9) requires each class member to prove that BSI actually knew that it was trying to collect a discharged debt. § 559.72(9), Fla. Stat. Assessing liability will necessitate that the Court determine whether BSI possessed actual knowledge of the class member's discharge and whether BSI attempted to collect the debt despite this knowledge.

Likewise, liability under Section 559.72(18) and 15 U.S.C. § 1692c(a)(2) arises where a person attempts to collect a debt when it knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication. Therefore, for every borrower, the Court must make individualized findings concerning: (1) whether BSI received notice sufficient to give it actual knowledge that the borrower was represented by an attorney; (2) whether BSI knew or could ascertain that attorney's name and address; (3) whether the attorney represented the borrower with respect to the loan serviced by BSI; and (4) whether the borrower the borrower's attorney consented to the communication from BSI.

There is simply no way to determine BSI's knowledge without individual inquires for each class member because whether BSI had actual knowledge is dependent on numerous borrower-specific issues. Issues will predominate over any common issues of law or fact.

> **4.    The Court must determine whether each class member's loan was in default when BSI began servicing the loan to determine whether the FDCPA applies.**

The FDCPA applies only to "debt collectors." *Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013). The statute specifically excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at

the time it was obtained by such person." Thus, "that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

To determine BSI's liability, the Court will need to make specific factual findings regarding the default status of each class member's loan at the time BSI began servicing that loan. BSI does not track which loans in its portfolio were in default when received. Therefore, determining a the status of a class member's loan at the time of service transfer will require a tedious loan-by-loan examination to determine if each class member borrower had committed and failed to cure a monetary or non-monetary default under the terms of the loan as of a specific date.

### 5. Application of the bona fide error defenses require individualize factual and legal inquiries for each class member.

Both the FCCPA and FDCPA provide bona fide error defenses, which offer a complete defense to liability if the defendant "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error." § 559.77(3), Fla. Stat.; *see* 15 U.S.C. § 1692k(c) (substantially the same language). "[T]he bona fide error defense protects against liability for "errors like clerical or factual mistakes." *Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 646 (11th Cir. 2015) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010)).

Despite Plaintiff's suggestions to the contrary, it is not BSI's policy to send debt collection communications to customers post-discharge. Therefore, any debt collection attempts made to a customer who surrendered their property and received a discharge of their personal liability would be the result of an error. Therefore, determining whether the defenses apply will require the Court

to undertake individual mini-trials for each class member. For each borrower, this includes reviewing BSI's explanation for sending the communications, determining BSI actually committed a bona fide error, and then examining whether BSI's policies were reasonably adapted to avoid that specific error.

Plaintiff's own case demonstrates why the bona fide error defense eludes aggregate resolution. Plaintiff's loan was not coded for bankruptcy when transferred to BSI for servicing. BSI has specific policies and procedures in place that are designed to identify bankruptcy filings or discharges associated with newly-acquired loans. Therefore, a significant number of the communications from BSI to Plaintiff arise out of a factually specific error covered by specific BSI policies. Likewise, Plaintiff told a BSI employee that he had filed bankruptcy and provided his bankruptcy case number. (Dkt. 34-8, at 14). Per BSI's policies[18], the BSI employee internally escalated the issue, requesting confirmation of the bankruptcy filing and asking that Plaintiff's loan file be updated accordingly. (Dkt. 34-8, at 14). However, based on an apparent clerical mistake, Plaintiff's file was not updated. This presents another highly individualized factual defense that is specific to Plaintiff's individual claims.

Resolving BSI's bona fide error defenses will require individual mini-trial for each class member, which will predominate over any common issues and thwart the purpose of class joinder.

**E.      Numerous Court Have Rejected Similar FDCPA and FCCPA Classes.**

A number of courts have declined to certify similar FDCPA and FCCPA class addressing similar issues because for the same reasons that the present class fails to satisfy ascertainability, predominance, or commonality. *See, e.g., Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 681 (M.D. Fla. 2015) (denying the plaintiff's motion to certify her Fair Debt Collection Practices

---

[18] Decl., Ex. A, pg. 3–4.

Act ("FDCPA") claims because: (1) the class was not ascertainable where the defendant's records did not reveal whether the underlying debt was a consumer debt; and (2) the court would be required to conduct individualized case-by-case inquiries into whether each class member's debt was time-barred); *Drossin v. Nat'l Action Fin. Services, Inc.*, 255 F.R.D. 608, 619 (S.D. Fla. 2009) (finding that a proposed FCCPA class failed the commonality prong because the class would "require individualized inquiries into whether in each case a non-existent right (a debt) was asserted though Defendant knew the right did not exist"); *Dalton v. FMA Enterprises, Inc.*, 1996 WL 379105, at *7 (M.D. Fla. July 1, 1996) (denying class certification for the plaintiff's FCCPA claims because common questions did not predominate over individual issues regarding the underlying debts); *Powers v. Credit Mgmt. Services, Inc.*, 776 F.3d 567, 572 (8th Cir. 2015) (reversing the district court's order granting class certification, noting that the district court failed to address the issue of the FDCPA's bona fide error defense and did not consider that the defense "may depend on the facts of a particular class member's claim.").

### F.    Plaintiff's Reliance on *Prindle* and *Lapointe* is Misplaced.

Plaintiff relies heavily on *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4466838 (M.D. Fla. Aug. 24, 2016), and *Lapointe v. Bank of Am., N.A.*, Case No. 8:15-CV-1402-T-26EAJ (M.D. Fla.) (Doc. 56), as examples of Middle District of Florida courts finding that "class treatment was appropriate under similar factual circumstances for a class of debtors who were sent collections communications relating to discharged debts." (Doc. 34, at 8.) However, Plaintiff's reliance is misplaced.

In *Prindle*, the class definition included only those borrowers that received post-discharge "mortgage statements," rather than all communications. *Id.* at *12. Therefore, the status of the communications as debt collection could be determined on a uniform basis. Further, the only claim

considered for class certification was a single FDCPA claim under § 1692e. *Id.* at *1; *Prindle v. Carrington Mortgage Services, LLC*, 2016 WL 4369424, at *1 (M.D. Fla. Aug. 16, 2016). Unlike the FCCPA and FDPCA in this case, the defendant's actual knowledge is not an element of § 1692e. Therefore, the *Prindle* court did not determine whether actual knowledge frustrated predominance or ascertainability. Last, the plaintiff presented actual evidence to support his assertions of common conduct and ascertainability. Specifically, the defendant's deposition reveal that if treatment of the plaintiff's account was not "atypical" and that the defendant could easily generate a report identifying which loans it acquired in default to determine the defendant's status as a debt collector. *Prindle*, 2016 WL 4466838, at *6, *8. Here, Plaintiff did not depose BSI's corporate representative, and his arguments rely solely on the unsupported allegations of counsel. Further, BSI has presented uncontroverted evidence that the communications to Plaintiff were atypical.[19] Therefore, *Prindle* has little bearing the present claims.

Plaintiff relies heavily on the unpolished decision in *Lapointe* because Judge Lazzara certified a class nearly-identical to present putative class. (Dkt. 34-10, at 13.) As a preliminary matter, although *Lapointe* addresses a similar class, the Court is not bound by the decision. Class certification is heavily based on the individual underlying facts of the case and the actual evidence the plaintiff submits to support the Rule 23 elements. Plaintiff has the burden of proof of showing that the present class satisfies the Rule 23 elements with respect to the present defendant. Therefore, it is more important consider the court's reasoning in the context of the evidence and arguments actually presented to the court.

To this end, the *Lapointe* holding is flawed in several respects. First, the plaintiff's Motion for Class Certification presented little in the way of actual evidence to support their arguments that

---

[19] Decl., Ex. A, pg. 3–4, 15–16, 22–25, 32–35.

the class satisfied Rule 23, instead relying heavily on the assertions of counsel. A copy of the *Lapointe* Motion for Class Certification is attached as Exhibit 2. As such, the plaintiff utterly failed to meet his burden of proof. Second, in their opposition, the defendant did not raise a number of the arguments addressed by BSI in the present opposition. For example, the defendant did not address the issues concerning: (1) the actual knowledge requirement contained in the majority of the claims, (2) the status of the debts as consumer debts; (2) the status of the defendant as a "debt collector;" (3) the status of the individual communications as "debt collection;" and (4) the dearth of actual evidence supporting plaintiff's claims. Therefore, Judge Lazzara did not consider these issues. Last, the court's order granting certification provides little actual analysis and relies heavily on the uncorroborated arguments of the plaintiff's counsel.[20] Consequently, the *Lapointe* holding provides little guidance in this case.

## V.    CONCLUSION.

Rule 23 was "designed to further procedural fairness and efficiency." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010). Rule 23 provides a vital gatekeeping function because where claims are "predominantly case-specific in nature, it becomes clear that there is nothing to be gained by certifying this case as a class action; nothing, that is, except the blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1241 (11th Cir. 2000).

---

[20] Finding, for example, that "[a]s alleged by Plaintiff, the members of the class would be in the same circumstances" and "[b]ecause Plaintiff asserts claims not only typical of, but identical to, those of the other members of the proposed class, the typicality requirement is easily satisfied in this case," without evidence supporting the assertions. (Doc. 34-10, at 6–7).

Plaintiff fails to satisfy his burden under Rule 23. The class cannot be ascertained, there are no common issues of fact or law, and individual issues of abound. Therefore, the Court should deny Plaintiff' Class Certification Motion.

Dated: February 6, 2017.

Respectfully submitted,

/s/ S. Douglas Knox

S. Douglas Knox
Florida Bar No. 849871
Douglas.Knox@quarles.com
J. Kirby McDonough
Florida Bar No. 79031
Kirby.McDonough@quarles.com
Zachary S. Foster
Florida Bar No. 111980
Zachary.Foster@quarles.com
QUARLES & BRADY LLP
101 E. Kennedy Blvd., Suite 3400
Tampa, FL 33602
Telephone: 813-387-0300
Fax: 813-387-1800
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 6, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Brian L. Shrader, Esq.
Gus M. Centrone, Esq.
CENTRONE & SHRADER, PLLC
612 W. Bay Street
Tampa, Florida 33606
bshrader@centroneshrader.com
gcentrone@centroneshrader.com

Katherine Earle Yanes, Esq.,
KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, Florida 33601
kyanes@kmf-law.com

*/s/ S. Douglas Knox*
Attorney