## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RONNIE J. McCAMIS,

      Plaintiff,

v.                               CASE NO:  8:16-CV-1130-T-30AEP

SERVIS ONE, INC., d/b/a BSI
FINANCIAL SERVICES, INCORPORATED,

      Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification (Dkt. 34) and Defendant's Response in Opposition (Dkt. 40).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

This class action relates to Defendant's alleged practice of attempting to collect a discharged debt directly from a debtor after Defendant was informed that the debt was discharged in bankruptcy.  Specifically, Plaintiff Ronnie J. McCamis alleges that in February 2015, he filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, in Case No. 8:15-bk-01271-CPM (Bankr. M.D. Fla.).  Plaintiff listed in his bankruptcy petition a mortgage on real property, provided notice in his bankruptcy case that he intended to surrender the property, and vacated the property.

Plaintiff received a discharge in bankruptcy that extinguished his personal liability on the mortgage debt in May 2015.

Defendant Servis One, Inc. d/b/a BSI Financial Services, Inc. ("BSI") began servicing the mortgage after it was discharged.  Plaintiff was represented by counsel in the bankruptcy case and was also represented by the law firm of Centrone & Shrader, P.A. with respect to BSI's continued collection efforts post-bankruptcy.  Plaintiff notified BSI of his bankruptcy discharge and representation by counsel.

Plaintiff alleges that despite BSI's actual knowledge that Plaintiff was represented by counsel and that his personal liability on the mortgage debt had been discharged in bankruptcy, BSI continued to contact Plaintiff directly in an attempt to collect the mortgage debt from him.  During the period of time from October 2015, to January 2016, BSI sent Plaintiff Mortgage Statements that included a payment coupon and stated an amount due and a payment date, with payment instructions.[1]

BSI also sent Plaintiff correspondence,[2] like a letter notifying Plaintiff that BSI would be servicing the loan and stating that "your total unpaid principal balance is $117,422.86" and "[t]he total debt inclusive of all past due interest and fees, if any is $165,363.95," a letter providing "options" regarding the loan such as loan modification and a repayment plan, and two letters regarding hazard insurance on the property.

---

[1]

The mortgage statements are attached to Plaintiff's complaint at Exhibit A.

[2]

The correspondence is attached to Plaintiff's complaint at Exhibit B.

Based on this conduct, Plaintiff alleged, on behalf of himself and the class, the following claims: (1) violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and (3) relief under 11 U.S.C. § 105(a) for BSI's violation of the discharge injunction (Dkt. 1).

On July 6, 2016, BSI moved to dismiss the complaint for lack of standing and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. BSI also argued that the Court did not have jurisdiction to award any relief to Plaintiff related to BSI's alleged violation of the discharge injunction (Dkt. 13).

On July 20, 2016, Plaintiff filed his response in opposition to BSI's motion to dismiss (Dkt. 14).

On July 29, 2016, the Court granted the motion in part and denied the motion in part. The Court explained that Plaintiff had standing to bring his FCCPA and FDCPA claims. The Court also concluded that Plaintiff's FCCPA and FDCPA claims were sufficient with respect to the mortgage statements and correspondence BSI sent directly to Plaintiff, except for the two letters related to hazard insurance. The Court dismissed Plaintiff's claims alleging that the communications were "harassing" under 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7) because the letters "could not reasonably be expected to harass Plaintiff." Finally, the Court dismissed Plaintiff's claim for relief under 11 U.S.C. § 105(a) for BSI's alleged violation of Plaintiff's discharge injunction because the Court concluded that Plaintiff must seek this relief in the bankruptcy court (Dkt. 19).

Plaintiff now requests that the Court certify the following class:

All individuals who: (1) filed a Chapter 7 or Chapter 13 bankruptcy in the Middle District of Florida, (2) surrendered their home in the bankruptcy proceedings, (3) obtained a discharge, and (4) after they received the discharge, received communications related to the discharged mortgage from or on behalf of Servis One, Inc., d/b/a BSI Financial Services, Inc., on or after May 6, 2014.

(Dkt. 34).[3]

BSI opposes Plaintiff's motion for class certification; its objection to class certification rests on three grounds: (1) the proposed class is not ascertainable; (2) Plaintiff fails to identify any common issues of law or fact; and (3) the class does not satisfy the Rule 23(b)(3) predominance standard. The Court agrees with BSI and focuses its analysis on these three issues.

## RULE 23 CLASS CERTIFICATION STANDARD

A district court is vested with broad discretion in determining whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). However, a district court may certify a class action only if Plaintiff has met the implicit and explicit requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–52 (2011); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

As a threshold issue, Plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th

---

[3]

Plaintiff's motion mistakenly references Plaintiff's harassment claims under 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7); as explained above, the Court dismissed those claims (Dkt. 19).

Cir. 2012).  Assuming the class is ascertainable, Plaintiff must then prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation as required by Rule 23(a)." *Comcast Corporation v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (emphasis in original).  Plaintiff must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  *See id.*  Only after a "rigorous analysis" may a court determine that the movant has satisfied Rule 23's prerequisites and properly certify the class.  *See id.*

## ANALYSIS

## I.    Ascertainability of Plaintiff's Proposed Class

The Eleventh Circuit instructs that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 Fed.Appx. 945, 946 (11th Cir. 2015) (citing *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787 (11th Cir. 2014)).  Identifying class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotation marks omitted).  "If Plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is property denied." *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 680 (M.D. Fla. 2015) (citing *Walewski v. Zenimax Media, Inc.*, 502 Fed.Appx. 857, 861 (11th Cir. 2012)).

Notably, Rule 23 "does not set forth a mere pleading standard." *Comcast Corp.*, 133 S.Ct. at 1432.  As such, "[a] plaintiff cannot establish ascertainability simply by asserting that

class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Karhu*, 621 Fed.Appx. at 948.

Here, although Plaintiff's motion does not directly address the ascertainability requirement, his proposed methodology to identify class members appears to be as follows: (1) first, BSI provides Plaintiff with a list of all customers BSI serviced with loans related to properties within the Middle District of Florida; (2) then, using the list, Plaintiff searches public records to identify those customers that filed bankruptcy, surrendered their home in the bankruptcy case, and received a bankruptcy discharge of their mortgage debt; (3) Plaintiff provides BSI with a list of the borrowers he identified; and (4) BSI then conducts a loan-by-loan review to determine if BSI sent the customers any communications related to the discharged mortgage.

BSI argues that Plaintiff's proposal is not feasible because it requires protracted individual inquiries. The underlying circumstances of each bankruptcy would need to be examined to determine whether the class member received a discharge of the debt. BSI points out that it does not track whether borrowers use their properties for investment purposes. Thus, each bankruptcy would also need to be analyzed to confirm that the debt related to the class member's residence. BSI also states that it would be difficult for BSI to identify the customers that "received" BSI's communications (as indicated in Plaintiff's proposed class), especially if the correspondence was mailed to a property that was presumably surrendered and vacated by the customer. And, whether BSI had actual

-6-

knowledge of whether the customer was represented by an attorney would require a highly individualized inquiry. BSI points out that servicers learn of attorney representation in a number of ways, including written or oral notice from the borrower's attorney, from the borrower, or from a prior servicer. BSI would have to conduct a loan-by-loan review of all servicing notes, call recordings, and imaged correspondence to see if BSI received potential notice. Then, the Court would be forced to analyze the nature and substance of each notice to determine whether the communications were sufficient to provide BSI actual knowledge of attorney representation.

The Court concludes that BSI's arguments are well-taken. In short, BSI has shown that, under these circumstances, class members cannot be identified in an administratively feasible (or manageable) way. In other words, Plaintiff has not met his burden to establish ascertainability. Accordingly, class certification is inappropriate.

## II.    Common Issues of Fact or Law

Although the Court can deny Plaintiff's motion for class certification solely based on his failure to establish the prerequisite of ascertainability, for the parties' benefit, the Court will address Defendants' remaining arguments that Plaintiff cannot establish the commonality requirement and the predominance prong.

The commonality requirement typically "refers to the group of characteristics of the class." *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class wide proof." *Cooper v. Southern. Co.,* 390 F.3d 695, 714 (11th Cir. 2004), *overruled*

*on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (quoting *Murray v.*
*Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)).  Commonality "is easy to misread, since
[a]ny competently crafted class complaint literally raises common 'questions.'"  *Dukes*, 564
U.S. at 349 (quoting Rachard A. Nagareda, *Class Certification in the Age of Aggregate*
*Proof*, 84 N.Y.U.L. Rev. 97 (2009)).  Commonality requires that the claims depend on a
common contention and that the common contention "must be of such a nature that it is
capable of classwide resolution."  *Id.* at 350.  "Dissimilarities within the proposed class are
what have the potential to impede the generation of common answers."  *Id.*

Although the commonality requirement is admittedly a low hurdle, Plaintiff does not
establish this factor here because the conduct Plaintiff complains of is not necessarily
standardized toward the members of the proposed class.  Plaintiff's claims do not arise out
of a single form communication.  Rather, Plaintiff's class definition includes customers who
received *any* communications related to their discharged mortgage.  As shown by the
communications attached to Plaintiff's motion, this class encompasses a wide range of very
different letters.  And, as this Court previously ruled, not every communication from BSI
constituted debt collection (*see* Dkt. 19).  Therefore, whether each communication is
actionable depends on the actual contents of the communications.  This makes it difficult for
the Court to reach common answers regarding liability.

Notably, Plaintiff relies almost exclusively on the allegations of the complaint to argue
that BSI had a policy of communicating with borrowers post-discharge.  BSI, through its
Declaration and attachments to same, has disputed this allegation.  Contrary to Plaintiff's

allegations, BSI's Bankruptcy Policies and Loan Boarding Service Transfer Instructions require its employees to update a borrower's account with any known bankruptcy information and place a bankruptcy hold on the account. While the hold is active, BSI ceases all mortgage-related communications to the borrower and directs any future communications to the borrower's counsel, unless the borrower's counsel provides BSI written authorization to communicate with the borrower directly. If a borrower receives a discharge, BSI flags the account and sends no additional mortgage-related communications to the borrower unless otherwise requested by the borrower or the borrower's attorney.[4]

The Court concludes that the particular facts of this case make clear that the commonality requirement is not met. This is not a case where the defendant's liability to the class turns on the legality of uniform language sent to every class member. Different communications are at issue here. And BSI presents evidence establishing that it did not have a common policy of communicating with borrowers post-discharge. Thus, BSI's liability turns on a host of individual issues of fact and law that do not lend themselves to aggregate resolution. Accordingly, class certification is inappropriate.

## III.    The Predominance Requirement

As stated above, in order to have a class certified, Plaintiff must not only satisfy Rule 23(a), but must also show that he meets one of the alternative requirements of Rule 23(b). Plaintiff's motion argues that his claims satisfy the requirements for certification under Rule 23(b)(3).

---

[4] BSI admits that Plaintiff's file was not updated correctly to reflect his bankruptcy discharge.

For class certification to be appropriate under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for a "fair and efficient adjudication of the controversy." *Cooper,* 390 F.3d at 722 (citing Fed.R.Civ.P. 23(b)(3)). Thus, Rule 23(b)(3) imposes two additional requirements to Rule 23(a): predominance and increased efficiency (superiority). *See id.* (citing *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997)).

BSI argues that the putative class does not satisfy the predominance requirement. The Court agrees. Common issues will not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Jackson,* 130 F.3d at 1006 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014,1023 (11th Cir. 1996)). A class should not be certified if it appears that most of the plaintiffs' claims have highly case-specific factual issues. *See id.* The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. *See id.* at 1005.

Here, as the Court has already explained, Plaintiff does not establish the commonality requirement. As such, the predominance requirement similarly fails. It is important to note another difference in the purported common facts, not previously discussed herein. Plaintiff appears to assume that the loans at issue relate to residential mortgages and are per se consumer debts. But, as BSI points out, loans for residential properties used as rental, investment, or business properties, or loans secured by a borrower's home where the loan proceeds are used for commercial purposes are not necessarily consumer debts. The Court

would need to make individual inquiries into each class member's use of the property and the loan proceeds to determine if the debt was a consumer debt. BSI states that its records do not track whether customers use their properties for investment purposes.

Moreover, the majority of Plaintiff's FCCPA and FDCPA claims involve a showing that BSI had actual knowledge of the discharge and still attempted to collect the debt despite this knowledge and/or despite the knowledge that it knew that the borrower was represented by an attorney. *See* Sections 559.72(9), 559.72(18), Fla. Stat.; 15 U.S.C. § 1692c(a)(2).

Finally, the application of the bona fide error defense requires individualized factual and legal inquiries for each class member. Specifically, both the FCCPA and FDCPA provide bona fide error defenses, which offers a defense to liability if the defendant "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error." Section 559.77(3), Fla. Stat.; 15 U.S.C. § 1692k(c) (containing substantially the same language). "[T]he bona fide error defense protects against liability for 'errors like clerical or factual mistakes.'" *Prescott v. Seterus, Inc.*, 635 Fed.Appx. 640, 646 (11th Cir. 2015) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010)).

As discussed above, BSI has provided evidence showing that it is not BSI's policy to send debt collection communications to customers post-discharge. Therefore, it may be necessary for the Court to determine whether the bona fide error defense applies to some of the claims in this case. Accordingly, class certification is inappropriate because Plaintiff has

failed to establish that common issues predominate over individual issues.  *See Cooper*, 390

F.3d at 722 ("[A] class action should not proceed under Rule 23(b)(3) when it appears that

most, if not all, of the plaintiffs' claims will stand or fall, not on the question whether the

defendant has a practice or policy . . . but on the resolution of highly case-specific factual

issues.") (internal quotations and citations omitted).

IV.    **Plaintiff's Reliance on *Prindle* and *Lapointe* Is Misplaced**

The Court makes one final point regarding Plaintiff's motion.  Plaintiff relies heavily

on *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4466838 (M.D. Fla. Aug. 24, 2016)

and *Lapointe v. Bank of Am., N.A.*, Case No. 8:15-CV-1402-T-26EAJ (M.D. Fla. April 26,

2016) (Dkt. 56), as examples of cases that concluded that class treatment was appropriate

under similar factual circumstances for a "class of debtors who were sent collections

communications relating to discharged debts."   (Dkt. 34).   However, this reliance is

misplaced because both *Prindle* and *Lapointe* are distinguishable.

In *Prindle*, the class definition included only those borrowers that received post-

discharge "mortgage statements," rather than all communications.  2016 WL 4466838, at

*12.  Therefore, whether the communications constituted debt collection could be determined

uniformly.  Further, the only claim at issue was a single FDCPA claim under section 1692e.

*See id.* at *1.  Notably, unlike the claims here, knowledge is not an element of section 1692e.

Finally, the plaintiff presented actual evidence to support his allegations of common conduct

through the defendant's deposition.  *See id.* at *5-6.

In *Lapointe*, an unpublished decision that certified a class nearly-identical to the present putative class, the court did not focus on the issues raised by BSI here related to the actual knowledge requirement contained in the majority of the claims, the status of the debts as consumer debts, the status of the individual communications as "debt collection," and the bona fide error defense. Consequently, *Lapointe* provides little guidance on the issues presented in this case. *See* Case No. 8:15-CV-1402-T-26EAJ at Dkt. 56.

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification (Dkt. 34) is denied.

**DONE** and **ORDERED** in Tampa, Florida on February 14, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record